**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Nikolas SEVERDIJA,
Defendant-Appellee.**

No. 85–5077.

United States Court of Appeals,
Eleventh Circuit.

June 10, 1986.

Stanley Marcus, U.S. Atty., Jon May, Sonia Escobio O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Linda L. Carroll, P.A., Miami, Fla., for defendant-appellee.

Before HILL and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

HILL, Circuit Judge:

On October 27, 1981, appellee Nikolas Severdija was arrested by United States Coast Guard personnel after discovery of 8,000 pounds of marijuana aboard the vessel he captained. Severdija was subsequently tried and convicted in a jury trial of conspiracy to possess with the intent to distribute marijuana, in violation of 21 U.S.C. § 955c, and possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 955a(a) and 18 U.S.C. § 2. Severdija moved for a new trial alleging that the government had withheld evidence favorable to his defense. The district court granted Severdija's motion, resulting in this appeal.

## FACTS

The following facts are relevant to the decision in this case. On or about October 25, 1981, officers of the Coast Guard cutter VALIANT boarded the CAPT. OTIS II, captained by Severdija, while it was anchored off the Mysterioso Banks in the Caribbean Sea. Boarding officers interviewed Severdija and conducted a safety inspection of the vessel.

After completion of this boarding, Ensign J.H. Barker, another member of the boarding party, prepared a handwritten report regarding the boarding of the CAPT. OTIS II and the interview with Severdija. According to Ensign Barker's written statement, which the prosecution produced after trial at the district court's direction, Severdija told Barker he had been employed to pick up a tow at Mysterioso Banks, that he had been a day late in arriving, and that if he did not make contact with the vessel soon he was returning to Miami. Barker further noted Severdija's remark that he did not know his crew very well and concluded from Severdija's statements that he "didn't trust them too much." Finally, Barker reported the following conversation with appellee:

> He said that he knew a big load was coming up in a few days on a shrimper, and that we should stick around the area because the fishing would be good.

This written statement was not released to the defendant despite the fact that at arraignment the court entered a standing discovery order requiring the prosecution to produce all *Brady* material as it became available.

Boatswain mate Ronald Hull, delegated the responsibility of watching over the crew members of the boarding vessel during the boarding, was the only member of the boarding party called by the government to testify at trial. Hull testified that from his position at the stern area of the CAPT. OTIS II he did not see any equipment or lines that could be used to tow another vessel. Hull admitted he did not inspect the vessel for any such equipment. He further testified that, while only overhearing a portion of Severdija's statements to the interviewing officers, he did hear Severdija state that he was awaiting a disabled vessel that needed to be towed.

On the morning of October 27, 1981, the Coast Guard cutter DAUNTLESS encountered the CAPT. OTIS II in approximately the same location of the initial boarding.

At this time the CAPT. OTIS II was tied to a second vessel, the RICKY I. Officers from the DAUNTLESS contacted the CAPT. OTIS II, at which time Severdija informed them that there was marijuana aboard his vessel and suggested that they contact the Drug Enforcement Agency. Officers from the DAUNTLESS subsequently boarded the CAPT. OTIS II and conducted a search of the vessel, uncovering over 8,000 pounds of marijuana. Severdija was arrested and charged with the offenses previously mentioned. As the boarding of the CAPT. OTIS II was taking place, other officers from the DAUNTLESS boarded the RICKY I. Upon inspection of the vessel, Coast Guard officers discovered marijuana residue and burlap bags similar to those carrying the marijuana that had been discovered on the CAPT. OTIS II. Evidence was presented that the RICKY I had severe mechanical problems and was taking on water at the time of the boarding.

Severdija testified at trial concerning events leading up to and including the boardings. Severdija stated he was initially approached about taking the CAPT. OTIS II to Nicaragua and then towing another vessel from there to Miami. Severdija turned down this offer because of previous difficulties with the Nicaraguan government. He eventually agreed to rendezvous with the disabled vessel at Mysterioso Banks. Severdija testified he did not pick the crew aboard the CAPT. OTIS II and did not know the name of the vessel he was to meet or the name of its captain. According to Severdija, he plotted a route from Miami to the Dry Tortugas, then to the Mysterioso Banks, but deviated from that route when he developed mechanical problems and was forced to drop anchor in Cuban waters. After finally reaching the Mysterioso Banks and being boarded by officers of the VALIANT, Severdija stated he waited two additional days before the RICKY I arrived under its own power on the evening of October 26, 1981. Severdija recounted that the vessel requested assistance and that he responded he would assist them after sunrise. Later that night he observed one of his crewmen transferring a line from the RICKY I to the CAPT. OTIS II, at which time he grabbed a rifle, chased the crewman back into the pilot house, and again told the vessel that they would not receive assistance before the morning. Severdija stated that he did not know the vessel, that he was expecting a vessel under tow as opposed to one self-propelled, and that the vessel did not appear to be taking on water at the time it was first observed.

The next morning the captain of the RICKY I relayed to Severdija that his vessel had engine problems and was taking on water. Severdija offered his crew's assistance, at which time the RICKY I requested that its cargo be transferred to the CAPT. OTIS II. Severdija testified that it was at this time that he discovered the RICKY I was transporting marijuana. Severdija sustained an injury to his arm during the transfer of the cargo and went to the pilot house to attend his wound. While he was in the pilot house, the Coast Guard cutter DAUNTLESS established radio contact, at which time Severdija informed them that there was marijuana aboard his vessel. The boarding discussed previously then ensued.

## DISCUSSION

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court set forth three criteria that a criminal defendant must establish to prove a claimed violation of due process resulting from the prosecution's withholding of evidence. The defendant alleging a *Brady* violation must demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. *See United States v. McMahon,* 715 F.2d 498, 501 (11th Cir.), *cert. denied,* 464 U.S. 1001, 104 S.Ct. 507, 78 L.Ed.2d 697 (1983).

In the case before us the government asserts that no *Brady* violation has been established and as such the district court

abused its discretion in granting a new trial. The government's principal argument in support of this contention is that there has in fact been no suppression of evidence, and thus the first prong of the *Brady* test has not been satisfied. With respect to this contention, the government initially argues that Judge Eaton's ruling was premised on an error of fact; the mistaken belief that Severdija had testified at trial regarding his statement to members of the VALIANT that they be on the lookout for a shrimp boat entering the area soon which would be transporting a large amount of marijuana. At trial, however, Severdija recounted only his statement to the boarding officers explaining that he had been employed to take the CAPT. OTIS II to the Mysterioso Banks to pick up a tow. It is the government's position that this misapprehension of the relevant facts led the district court to conclude erroneously that had Severdija possessed Ensign Barker's report he could have used it or Barker to corroborate his testimony at the trial. As there was no testimony concerning the anticipated arrival of a marijuana laden boat, there was nothing to corroborate.

The government also asserts that there has been no suppression as a matter of law, propounding the position that "disclosure under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is not required where a defendant has equal access to the material at issue." *United States v. Cortez,* 757 F.2d 1204, 1208 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). The government relies upon the case of *United States v. McMahon,* 715 F.2d 498 (11th Cir.1983), in which this court held that the government's failure to provide a defendant with psychiatric reports of the government's key witness did not constitute a *Brady* viola-

tion as "had they exercised reasonable diligence, appellant's counsel could have contacted the doctors who prepared the reports, just as Abbott's [the codefendant] attorney did, and obtained any relevant information or called them as witnesses." *Id.* at 501–02. Applying that principle here, the government asserts that as Severdija was certainly aware of any statements he had made to Ensign Barker, even though he did not know Ensign Barker by name, pursuant to *McMahon* he could have in the exercise of due diligence obtained all the reports of the boarding, and thus obtained Barker's report.

■ Appellant's arguments that there has been no suppression of evidence are unpersuasive. Despite the court's standing discovery order, neither the identity of Ensign Barker nor the contents of his report was disclosed to the defense until after the jury had returned its verdict and appellee had appeared for purposes of sentencing. That Severdija did not testify at trial to the statement regarding the incoming boatload of marijuana is inconsequential.[1] This ignores the independent significance of Barker's written statement. The only material issue in dispute between the government and appellee was appellee's state of mind—did he knowingly and intentionally conspire to possess and distribute marijuana. The written statement of Ensign Barker provides independent evidence of appellee's state of mind as expressed by his words and deeds to a third party prior to his arrest.

Further, Severdija did not have equal access to this evidence nor could he have obtained it through the exercise of due diligence. Granted, Severdija was in all likelihood aware of the statement he had made to Ensign Barker. The evidence at

---

1. The statement by Severdija to Barker was most unusual. Even though Severdija must be assumed to have known of his own statement, in the absence of any means of corroborating his claim to have made it jurors might well have disbelieved him and held the falsity of his testimony against him. It is conceivable that Severdija recognized the possible detrimental effect

of such an uncorroborated self-serving statement and thus refrained from raising the statement before the jury. Regardless of the reason for the lack of reference to the statement at trial, had Severdija known that this testimony could have been corroborated it is highly likely that it would have been given.

issue, however, is not Severdija's statement; rather, Ensign Barker's recordation of those statements. There is no evidence that Severdija knew of such a recordation. Even if the defendant had, as the government now suggests, gone to the prosecutor and asked for the name of the VALIANT crewmember to whom he had spoken, Barker might well have refused to discuss the case with him. Without the crucial written statement, Severdija would have been at the mercy of Barker's memory, had he known Barker's name and called him as a witness.

The government also alleges that the district court's ruling was improper as the written statement was neither material nor favorable to Severdija's defense. Under the recent decision in *United States v. Bagley*, — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court appears to have announced a single standard for materiality of nondisclosed evidence, regardless of the specificity of the request for disclosure. Nondisclosed evidence is considered material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." 105 S.Ct. at 3385 (opinion of Blackmun, J.); *see also id.* (opinion of White, J., concurring in part and concurring in judgment).[2] Justice Blackmun's opinion further defined "a 'reasonable probability' as 'a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). Pursuant to this standard, we find Barker's statement both material and favorable.

As discussed earlier, Severdija's defense was grounded solely on a lack of the requisite intent necessary to commit the offenses charged; he contends he was at Mysterioso Banks only for purposes of picking up a tow and had no intention of rendezvousing with any marijuana laden vessel. Severdija claims that although marijuana was loaded from the RICKY I to his vessel, he was not a part of the conspiracy, being unaware that such an offloading was planned. Obviously, the government contends that Severdija intentionally rendezvoused with the RICKY I, knowing it to be loaded with marijuana.

Barker's statement indicated that Severdija communicated to Coast Guard officials his suspicion that marijuana would be on board a boat entering that area sometime soon and suggested that Coast Guard personnel remain within the area. The fact that these statements were made well prior to the arrest and in particular the fact that Severdija encouraged the continued presence of the Coast Guard in the area of the CAPT. OTIS II constitutes favorable and material evidence wholly consistent with appellee's defense. The credibility of Severdija on the question of intent was the critical issue before the jury at trial. As the district court judge stated, it is unlikely an individual who has the specific intent to conspire to possess marijuana would suggest that the Coast Guard remain in the vicinity of the intended marijuana operation. In light of the evidence presented at trial and set forth in the statement of facts, we conclude that had the written statement been available to the defendant there is a reasonable probability the outcome would have been different. Our decision is reenforced by the recognition that the trial judge is in the best position to determine the effect the failure to disclose the evidence had upon the outcome of the proceedings and to fashion an appropriate remedy. *See United States v. Rodriguez,*

---

**2.** In no clear-majority cases we look to that position taken by those members who concurred in the judgment on the narrowest grounds. *See Muir v. Alabama Educ. Television Comm'n*, 688 F.2d 1033, 1045 n. 30 (5th Cir. Unit B 1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983). In his concurrence in *Bagley*, Justice White, joined by Chief Justice Burger and Justice Rehnquist, agreed with the plurality opinion that the "reasonable probability" standard for determining materiality was "sufficiently flexible to cover all instances of prosecutorial failure to disclose evidence favorable to the accused." 105 S.Ct. at 3385. We conclude that a majority of the Court adopted the "reasonable probability" test as the single standard for determining the materiality of undisclosed evidence.

765 F.2d 1546, 1557 (11th Cir.1985). The trial judge here determined that the effect on the outcome was sufficient to satisfy the materiality requirement of *Brady*. We do not disagree. Barker's written statement was clearly favorable and material within the *Brady* standard.

We find appellant's arguments without merit. The grant of new trial by the district court is AFFIRMED.