**STATE of Iowa, Appellee,**

v.

**Steven Jay CLARK, Appellant.**

**No. 67151.**

Supreme Court of Iowa.

Oct. 27, 1982.

Francis C. Hoyt, Jr., Appellate Defender, and Chris Odell, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and Dan L. Johnston, Polk County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, LARSON, and SCHULTZ, JJ.

UHLENHOPP, Justice.

In this appeal defendant Steven Jay Clark asserts the trial court committed three errors during the trial of a first-degree murder charge.

The jury could find the following from the evidence. Lance Treleven was a drug dealer; he kept his drugs in a tool box. About a week before the homicide, defendant sanded the numbers off his pistol—which was identified as the gun used in the homicide. The day before the homicide, defendant, Ted Reeck, and Duane Merrifield smoked marijuana and discussed "shooting Lance or taking his money and stuff." They went to defendant's apartment where defendant oiled his pistol. The three men then drove to Treleven's apartment. They had a pipe with them, and their plan was that Reeck would wait in the getaway car while defendant and Merrifield "were either going to knock [Treleven] out with this pipe or they might shoot him or something like that." After finding another car in the driveway and waiting awhile, the three men drove away.

The next day Cleveland Curry heard footsteps on the outside stairway leading to the upstairs apartment of his neighbor, Treleven. He then heard a knock on the door above him and, shortly thereafter, an argument and two gunshots. After observing two figures run down the stairway and through an alley, Curry called the police. The police found Treleven lying in the kitchen, bleeding and unconscious. Treleven died the next day.

Officers located defendant and Merrifield five days later in Georgia. Defendant claimed that the day before the incident he had given his gun to Treleven as collateral for a drug purchase, and that on the day of the incident

when [defendant] came in the house Treleven became very enraged and was pushing the gun at him and wanted money so he could give the gun back to Clark. And

Clark stated that a scuffle ensued and the gun went off three times and they took the gun, took box and fled the scene.

The county attorney charged defendant with first-degree murder based on (a) wilful, deliberate, premeditated murder and (b) murder in the perpetration of a robbery. A jury found defendant guilty and he appealed. Merrifield's case was handled separately.

I. Several witnesses testified for the State, including Ted Reeck. Other evidence showed Reeck to be a regular drug user and that he had "done a lot of robberies." His testimony regarding this incident was corroborated by other proof.

During cross-examination of Reeck, the following occurred:

Q. You don't smoke marijuana every day? A. Not every day.

Q. About how often, Ted? A. Whenever I can sometimes get the money extra to buy it.

Q. You don't ever use it when you don't buy it—like have friends share it with you? A. Yeah, I've had friends sometimes, but—

Q. Do you sometimes steal things to get the money to get marijuana?

Mr. Thomas (prosecutor): I'll object to that, Your Honor. That's argumentative.

The Court: Sustained.

After a colloquy, the court stated:

It's not being offered for the purpose of impeaching the witness. On the other hand, by a statement of counsel for the defendant, and I accept that as being an honest statement on his part as to the reason for this line of inquiry, the asking of this witness if he's ever—in a sense—stolen property for the purpose of buying pot is for the purpose of testing his credibility and for that reason I'm going to sustain the objection because it's an improper way to test the credibility of that witness.

Defendant argues the court erred in stating that the question about stealing to get money for marijuana is an improper way to test credibility and therefore erred in sustaining the objection.

The commentators have viewed with disfavor the introduction of evidence about acts of misconduct by witnesses. McCormick on Evidence § 42, at 82–83 (2nd ed. 1972) ("Finally, a substantial number of courts prohibit altogether cross-examination as to acts of misconduct for impeachment purposes. This latter view is arguably the fairest and most expedient practice because of the dangers otherwise or prejudice (particularly if the witness is a party), of distraction and confusion, of abuse by the asking of unfounded questions, and of the difficulties, as demonstrated in the cases on appeal, of ascertaining whether particular acts relate to character for truthfulness."); 3A Wigmore on Evidence § 983, at 841 (Chadbourn rev. 1970) (characterizing the witness box as " 'the slaughterhouse of reputations' ").

Nonetheless the federal rules of evidence give judges discretion to permit cross-examination into specific instances of conduct:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Fed.R.Evid. 608.

The rule in Iowa tracks with the federal rule. State v. Crawford, 202 N.W.2d 99, 103–05 (Iowa 1972). We stated in State v. Johnson, 219 N.W.2d 690, 699 (Iowa 1974):

Defendant's next complaint is that trial court abused its discretion when it refused to permit cross-examination of the informer Nabors concerning the commission of certain crimes, including the crime of perjury allegedly committed by Nabors while acting as an undercover agent. We do not read the record as indicating trial court impermissibly restricted Nabor's cross-examination.

We once again observe that the admissibility of specific acts of misconduct on cross-examination to attack credibility of a witness is within the trial court's discretion and will be disturbed only when such discretion has been obviously abused.

The trial court in this case was in error in stating that cross-examination on specific misconduct of the witness is "an improper way to test the credibility of that witness."

■ Is a reversal required because of this erroneous reason given by the trial court? Undoubtedly we would have upheld sustension of the objection had the trial court simply exercised its discretion, and the general rule is that a right ruling for a wrong reason will not be reversed. Campbell v. Collins, 133 Iowa 152, 155, 110 N.W. 435, 436 (1907) ("The giving of a wrong reason for a right ruling does not taint it with error."). But defendant argues that we do not know the trial judge would have sustained the objection had he known he had discretion to overrule it.

■ We think however, for another reason, that the ruling of the court is not reversible error. From our review of the record we do not regard this case as close on the facts. The question is whether, when the jurors weighed Reeck's credibility, they understood the kind of person he is. They knew him to be habituated to drugs, and they heard evidence that he had done a lot of robberies. The other evidence in the case strongly implicated defendant. Assuming without deciding that the exclusion of the evidence in question was wrong because the reason given for it was erroneous, we hold that the exclusion was not prejudicial error. Without prejudice, a reversal is not called for on account of this ruling. State v. Trudo, 253 N.W.2d 101, 107–08

(Iowa 1977); *State v. Myers,* 257 Iowa 857, 862, 135 N.W.2d 73, 76 (1965); 24B C.J.S. *Criminal Law* §§ 1918(2) and (3) (1962).

II. Defendant objected to the introduction of pictures of the deceased depicting his wounds. The pictures were indeed grisly, but the trial court did not abuse its discretion in admitting them, especially on the issue of whether the death occurred intentionally, as the State claimed, or accidentally, as defendant contended. According to the State not one but two shots were fired, which tended to negate accidental death. Moreover, both shots entered the victim, while defendant went unscathed. The pictures tended to support the State's position. The court acted within its discretion in admitting the pictures. *State v. Fryer,* 243 N.W.2d 1, 7 (Iowa 1976).

III. Defendant argues, finally, that the evidence is insufficient to generate a fact issue of first-degree murder.

We have examined the record and hold that the evidence amply supports the verdict under the test in *State v. Robinson,* 288 N.W.2d 337 (Iowa 1980).

We find no reversible error.

AFFIRMED.