STATE of Iowa, Plaintiff–Appellee,

v.

Kenneth Allen FRAZIER, Jr., and Daniel J. Halstead, Defendants–Appellants.

No. 95–1355.

Court of Appeals of Iowa.

Oct. 25, 1996.

Martha M. McMinn, and Shelley A. Horak, Sioux City, for defendants-appellants.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Paul E. Kittredge, Assistant County Attorney, for plaintiff-appellee.

Heard by HABHAB, P.J., and CADY and VOGEL, JJ.

HABHAB, Presiding Judge.

Defendants Kenneth Frazier and Daniel Halstead appeal the judgment and sentence entered upon their convictions of first-degree burglary, assault while participating in a felony, and aggravated assault. We affirm.

Lyndon Hamann lives in the first floor apartment at 119 Center Street in Sioux City. On January 30, 1995, Hamann noticed Daniel Halstead in the entrance hallway of the apartment building and confronted him. Halstead informed Hamann he was on his way to a vacant upstairs apartment to remove some property. Hamann told Halstead to leave and he did; however, Halstead returned later the same evening. Hamann again confronted Halstead and told him to leave. After Halstead left, Hamann had his girlfriend telephone police to report the incidents.

At approximately 6:00 a.m. on January 31, Hamann was awakened by a noise coming from the upstairs apartment. He went to investigate and saw Halstead inside the apartment with his arms full of clothes. Hamann once again told Halstead to leave and Halstead refused. Hamann then went to his own apartment and returned with a baseball bat. When Hamann entered the upstairs apartment's living room, he realized there were two other men with Halstead, Kenneth Frazier and Herbert Davis. Frazier had a gun pointed at Hamann. Hamann was able to escape the apartment unharmed and return to his own apartment. He then witnessed all three men run out of the apartment house and get into an older brown Cadillac. Hamann immediately went to a nearby store and telephoned police.

The police found a car matching Hamann's description parked in the 200 block of Perry Street. After Hamann identified the car, police proceeded to the only lighted apartment unit at the location. The officers knocked on the door and heard scuffling inside. When the police entered, they found Frazier and his brother. Davis was found in the bathroom and Halstead was found hiding crouched down in the back of a closet. Hamann identified Frazier, Davis, and Halstead as the men who had been in the upstairs apartment in his building.

Frazier, Halstead, and Davis were charged with first-degree burglary, assault while participating in a felony, and aggravated assault. Davis entered into a plea agreement with the State and testified as a State's witness at the bench trial of Frazier and Halstead.

At trial, Davis testified he had driven the Cadillac to 119 Center Street with Frazier and Halstead to burglarize the vacant upstairs apartment. Davis also stated while they were in the apartment Hamann came in and Frazier pulled a gun on him. The three then left in the Cadillac and went to the 210 Perry apartment.

During his testimony, Davis stated he had entered into a plea agreement with the State wherein he pled guilty to second-degree burglary and assault while participating in a felony. In exchange, Davis explained he was not charged as an habitual offender or sen-

tenced for the mandatory minimum for use of a firearm. The agreement provided Davis would be sentenced to ten years on the burglary charge and five years on the assault charge and the sentences were to run consecutively. On direct examination, the State specifically asked Davis:

Q: Other than the plea agreement that you have entered into between the State of Iowa and yourself to resolve the charges against you and the State of Iowa, is there any other agreement that you have made with the State of Iowa?

A: No.

Q: So if there was any other kind of charge out there, that would not be part of this agreement, is that correct?

A: That's correct.

Frazier and Halstead waived their right to trial by jury and each presented an alibi defense. The court found them guilty as charged.

After the verdict, the defense learned that prior to trial, while Davis was in jail, he had agreed to bail out another inmate, Tony Davis [1] (Tony), if Tony would beat up or kill Hamann in order to keep him from testifying. Tony was bailed out of jail with money provided by Davis through his girlfriend. After Tony was released, he did not perform as he had agreed and reported the matter to authorities.

The plea agreement reached between the State and Davis' counsel provided if Davis agreed to the plea no other charges would be filed against him relating to Hamann. A portion of the plea agreement provided:

This agreement disposes of all possible state criminal charges against the defendant arising out of the facts referred to in the minutes of testimony or circumstances surrounding acts of the defendant relating to this matter and including Lyndon Hamann.

Although the State disclosed the plea agreement to the defense, it failed to inform them the agreement included Davis' attempted solicitation of Tony to beat up or kill Hamann. The prosecutor maintained that although he knew of these allegations against Davis at the time the plea agreement was drafted, a full police report requesting a formal charge had not yet been submitted to the county attorney's office, so no disclosure was made.

Frazier and Halstead filed a joint motion for a new trial and motion in arrest of judgment arguing, among other things, the State's failure to disclose the extent of Davis' plea agreement prejudiced them. They also maintained the court had erred in refusing to allow them to present evidence of Hamann's drug dealing and Davis' possession of gun-related items, in support of their theory of defense. The State argued the undisclosed information was not material, defendants were given adequate notice of the matter in the plea agreement, and defense counsel knew or should have known of the matter, as both defendants were in contact with Davis and Tony while in jail.

Following a hearing, the court denied defendants' motion for a new trial. In addressing defendants' claim regarding the State's failure to disclose exculpatory evidence, the court found there was "no reasonable probability the court would have reached a different result should the State have disclosed such information to the Defendants." It further found the exclusion of evidence of Hamann's drug dealing and Davis' possession of gun-related items was correct.

Defendants appeal. They argue the court should have allowed evidence of Hamann's motive to make false claims against them in support of their theory of defense. Specifically, they argue they should have been allowed to present evidence that Halstead had bought bad drugs from Hamann and threatened to make it known to the neighborhood that Hamann was a police informant. Defendants maintain they should have also been allowed to present evidence that Davis had possession of a gun and certain gun-related items. Furthermore, defendants contend the court used an incorrect standard when evaluating their claim of prejudice due to Davis' perjured testimony and the State's failure to correct it. Finally, defendants argue the State's failure to disclose the exculpatory evidence prejudiced them.

1. Tony Davis and Herbert Davis are not related.

*I. Exclusion of Evidence.* At trial, defendants alleged Hamann fabricated the charges in this case to deter Halstead from exposing his sale of bad drugs as well as the fact he was a police informant. Defendants also maintained that Davis had committed the charged crimes and had entered into a plea agreement to testify against defendants in order to avoid additional legal consequences of other pending criminal charges.

The defense argues the trial court's limitation of its cross-examination of Hamann and Davis, as well as its exclusion of testimony from defense witnesses, Sabasta and Buddi, denied defendants their constitutional right to present a defense. The defense further argues evidence regarding Davis' ownership of a gun or gun-related items found inside the Cadillac should have been admitted by the trial court.

At trial, the court generally sustained the State's objections to the admission of evidence that Hamann was a drug dealer pursuant to Iowa Rules of Evidence 608(b) and 609, except where it directly related to allegations of prior drug dealing involving Halstead. The trial court also precluded two defense witnesses, Buddi and Sabasta, from testifying as to Hamann's past drug dealing.

■ To the extent defendants raise constitutional issues, our review is de novo. *State v. Swaim,* 412 N.W.2d 568, 570 (Iowa 1987). Our review of a trial court's ruling under 608(b) will be disturbed on appeal only on abuse of discretion. *State v. Smith,* 522 N.W.2d 591, 593 (Iowa 1994).

Iowa Rule of Evidence 608(b) provides:

(b) **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purposes of attacking or supporting his credibility, other than conviction of crime as provided in Iowa Evid.R. 609,[2] may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross examined has testified.

■ From our review of the record, we find the trial court did not err in limiting the cross-examination of Hamann nor in excluding the testimony of Buddi and Sabasta pursuant to Iowa Rules of Evidence 608(b) and 609.[3] The court explained to the defense that for such evidence to be admissible it would have to "connect it up" to the crime for which defendants were being charged.

Although ordinarily inquiry into specific instances of conduct is not allowed, Iowa Rule of Evidence 608(b) permits such inquiry "in the discretion of the court" if probative of the witness's truthfulness or untruthfulness. The court's ruling, of course, will be disturbed only when its discretion has been obviously abused.

*State v. Martin,* 385 N.W.2d 549, 552 (Iowa 1986) (citing *State v. Clark,* 325 N.W.2d 381, 383 (Iowa 1982)). An abuse of discretion will be found when the court exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable. *Smith,* 522 N.W.2d at 593. We believe the trial court did not abuse its discretion by limiting the cross-examination of Hamann by the defense or by precluding testimony in this regard from Sabasta and Buddi. The defense did not relate this evidence to the crimes defendants were charged with, and it was well within the discretion of the trial court to exclude it.

■ Furthermore, from our de novo review of the record, we find no constitutional

---

**2.** Iowa Rule of Evidence 609 provides in part:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime involving dishonestly or false statement shall be admitted if elicited from the witness or established by public record during cross-examination, but only if the crime constituted a felony, aggravated misdemeanor, or other crime punishable by imprison-ment in excess of one year pursuant to the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect.

**3.** As no evidence of past convictions of Halstead was offered at trial, we do not address the appropriateness of the trial court's rulings under Iowa Rule of Evidence 609.

violation occurred as the trial court did permit the defense to present their theory that Hamann fabricated the burglary and assault to frame Halstead because he feared Halstead would expose his drug dealing. A defendant's right to present a defense "is a fundamental element of due process of law" and is well established. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023; *see State v. Fox*, 491 N.W.2d 527, 530 (Iowa 1992); *see also State v. Peterson*, 532 N.W.2d 813, 816 (Iowa App. 1995). The defense presented evidence to support their theory through the testimony of Halstead and two other witnesses. As such, we find defendants' constitutional right to present a defense was not violated by the exclusion of this evidence.

■ We move now to the issue of evidence regarding Davis' alleged possession of a gun and certain gun-related items. The defense attempted to show that Davis had possession of these items as part of their theory of defense and that Davis himself committed the charged crimes. In his deposition, Davis asserted his Fifth Amendment privilege and refused to answer questions regarding a .22 caliber rifle and ammunition found in the Cadillac. Defendants filed a pre-trial motion to strike Davis' testimony alleging, in part, that as Davis had invoked his Fifth Amendment privilege, defendants were denied their right to pre-trial discovery and would be denied effective confrontation and cross-examination at trial. In its resistance to defendants' motion, the State indicated it did not intend to offer the evidence at trial but it would offer Davis immunity for any testimony concerning ownership of the items.

The trial court denied defendants' motion to strike Davis' testimony but granted them a continuance to further investigate the matter in light of the State's offer of immunity to Davis. Davis was then deposed a second time, at which time the defense extensively examined him regarding the items found within the Cadillac.

■ The State contends the defense has not preserved error on this issue as defendants did not raise the issue again at trial. We agree.

It is generally recognized that a motion in limine does not preserve error since error does not occur until the matter is presented at trial. An objection should be made at trial to preserve error. This rule, however, has an exception. A defendant is not required to object at trial if the prior ruling on the motion in limine amounts to "an unequivocal holding concerning the issue raised."

*State v. Delaney*, 526 N.W.2d 170, 177 (Iowa App.1994) (citation omitted).

In our review of the transcript of the hearing on defendants' motion, the trial court did not indicate in any way that its ruling denying the defense's motion was unequivocal. This is evidenced by the court's continuing the initial trial date to enable the defense to further investigate the matter. At trial, the issue of the possession of the gun and ammunition was never raised by the State or by defendants. The defense should have raised the issue again at trial. This would have allowed the court the opportunity to consider the admissibility of the evidence and whether or not it should be excluded. *See id.* As the issue was not raised, we find error has not been preserved.

■ **II. The Brady Claim.** Defendants argue the State's failure to disclose exculpatory evidence regarding Davis' plea agreement violated the disclosure rule in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and further the resulting prejudice to defendants constitutes a ground for reversal. Specifically, defendants allege as the State failed to disclose that the terms of the plea agreement included Davis' attempted solicitation of Tony, the State thereby violated their due process right to exculpatory evidence under *Brady*.

■ As Halstead and Frazier raise constitutional issues, our review is de novo. We independently evaluate the totality of the circumstances as evidenced by the whole record. *State v. Peterson*, 532 N.W.2d 813 (Iowa App.1995).

Several requirements attend any *Brady* challenge. First, the prosecution must have withheld evidence from the defendant; second, the evidence must be favor-

able; and third, the evidence must be "material," that is, "such that there is a reasonable probability its disclosure would have changed the outcome." A defendant asserting a *Brady* violation must shoulder the burden of establishing proof of materiality.

*Brewer v. State,* 444 N.W.2d 77, 82–83 (Iowa 1989) (citations omitted).

In *United States v. Agurs,* 427 U.S. 97, 103–11, 96 S.Ct. 2392, 2397–401, 49 L.Ed.2d 342, 349–54 (1976), the Supreme Court established standards to determine if evidence is material under *Brady.* These standards depended first on the nature of the disclosed evidence, and second on the specificity of the defendant's request. *See State v. Anderson,* 410 N.W.2d 231, 233 (Iowa 1987). In *Agurs,* the Court determined that for *Brady* purposes, when assessing the materiality of undisclosed evidence not involving perjury, the standard to be utilized is whether the undisclosed evidence "might have affected the outcome." *See id.* The *Agurs* test was then replaced with the test of "reasonable probability" in *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *See Anderson,* 410 N.W.2d at 233.

Under the *Bagley* rule, undisclosed evidence is material for *Brady* purposes only if the defendant shows a reasonable probability that, if the evidence had been produced, the outcome would have been different.[4] *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3384, 87 L.Ed.2d at 494; *Anderson,* 410 N.W.2d at 233. In *Bagley,* the Court stated:

> We find the *Strickland* formulation of the *Agurs* test for materiality sufficiently flexible to cover the "no request," "general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability

sufficient to undermine confidence in the outcome.

*Bagley,* 473 U.S. at 682, 105 S.Ct. at 3384, 87 L.Ed.2d at 494; *see Anderson,* 410 N.W.2d at 233.

■ Defendants maintain the State had a duty to disclose the information regarding Davis' attempted solicitation of Tony even though the county attorney's office did not have all of the police reports of the investigation at the time the plea agreement was drafted. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley,* 514 U.S. 419, ——, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490, 508 (1995). As the prosecutor was aware of the possible additional charges even though the formal police reports had not yet been filed, we find he had a duty to disclose this information to the defense. We further find, in failing to make full disclosure of the plea agreement, the State withheld evidence which was favorable and exculpatory from defendants. *See Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494 (It is well settled that evidence which would impeach the credibility of a government witness is exculpatory within the meaning of *Brady.*). In our de novo review of the case, however, we do not find this evidence was material for *Brady* purposes.

The defense maintains the State's failure to disclose the plea agreement in its entirety deprived them of their right to effective cross-examination as Davis was not subject to impeachment on the basis of the plea agreement. We reject this contention. The defense was aware Davis received significant benefits for his testimony. He was allowed to plead to second-degree burglary, which carries a maximum ten year sentence, instead of a possible first-degree burglary, which carries a maximum twenty-five year sentence. He received the dismissal of an aggravated assault charge and avoidance of

---

4. In *Bagley,* the Court adopted the test for effective assistance of counsel set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068–69, 80 L.Ed.2d at 698.

the firearm enhancement, which carries a minimum five year sentence. He also avoided an habitual offender enhancement with a minimum three year sentence and the dismissal of two other unrelated charges. The defense cross-examined Davis as to all of these terms of the plea agreement in order to impeach his credibility.

In denying defendants' motion for a new trial, the trial court stated the withheld information:

[G]oes to the credibility of Herbert Davis and any motive he might have for testifying against the defendants. This motive would be the same as to the parts of the plea agreement the State disclosed which the court considered in assessing the credibility of Herbert Davis. In assessing his credibility the court considered the circumstances and events surrounding the incident and the consistency of his testimony with that of the other witnesses and evidence. *Even had the defense known of its existence, its use to impeach Herbert Davis would have only gone to his motive to testify against the defendant for which he already had sufficient notice or reason based upon the balance of the plea agreement.* There is no reasonable probability the court would have reached a different result should the State have disclosed such information to the Defendants. The failure to disclose did not undermine confidence in the outcome of the trial. The court concludes the Defendants received a fair trial.

(Emphasis added.)

In affirming the trial court's decision, we have also considered the other evidence offered by the State. The State's case did not depend on Davis' testimony. The State provided testimony from Hamann and police officers involved in the arrest and investigation of defendants. Davis' testimony served to further corroborate that of these witnesses. We find the additional undisclosed benefit of possible conspiracy or solicitation to murder charges did not change Davis' motive to testify and its disclosure would not have further affected the assessment of his credibility. Therefore, there is no reasonable probability that what little, if any, further impeachment value which may have been derived from full disclosure of the plea agreement would have changed the outcome of the trial.

The defense maintains, had the plea agreement been disclosed in its entirety, defendants would not have waived their right to trial by jury as Davis' attempted solicitation of Tony to beat up or kill Hamann would have served to impeach his testimony. The defense did use the known terms of the plea agreement to impeach Davis at defendants' bench trial. We have already noted only little, if any, further impeachment value could have been garnered from the undisclosed terms of the plea agreement. In light of our finding the nondisclosure was not material, we reject the defense's contention it would have impacted their decision to waive their right to trial by jury.

We do not condone the State's actions in failing to disclose the plea agreement in its entirety. However, in light of the totality of the circumstances, defendants have not met their burden of showing there is a reasonable probability disclosure of the plea agreement in its entirety would have changed the outcome of the trial. The State's failure to disclose this information did not undermine confidence in the outcome of the trial. No *Brady* violation has occurred.

**III. Alleged Perjured Testimony.** As discussed above, in denying defendants' motion for a new trial, the trial court employed the "reasonable probability of a different result" standard set forth in *Bagley* to determine the materiality of the State's failure to disclose the full terms of the plea agreement with Davis. Defendants maintain Davis gave perjured testimony when he failed to testify as to the full terms of the plea agreement at trial. Defendants assert that in light of the State's failure to correct this testimony, the standard to be utilized in determining the materiality of the evidence is the less stringent "reasonable likelihood" standard set forth in *Agurs*. *See Agurs*, 427 U.S. at 103–04, 96 S.Ct. at 2397, 49 L.Ed.2d at 350.

In *Agurs*, the court noted the *Brady* rule applies when "undisclosed evidence demon-

strates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." *Id.* The court indicates a "conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* The court went on to note that this standard is warranted in these situations, "not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process." *Id.*

Defendants assert that as the use of perjured testimony is fundamentally unfair, defendants' conviction must be set aside as there is a reasonable likelihood the perjured testimony affected the result.

 The State alleges the "reasonable probability" standard for assessing materiality of undisclosed evidence set forth in *Bagley* and the "reasonable likelihood" standard set forth in *Agurs* are substantively the same. We disagree. A "reasonable probability" as referenced in *Bagley* is a "probability sufficient to undermine confidence in the outcome of the trial." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3384, 87 L.Ed.2d at 494; *see Anderson,* 410 N.W.2d at 233. The prosecution's knowing use of perjured testimony invokes a standard different from that set forth in *Bagley:*

> [A]nother standard applies to a motion for new trial based on newly discovered evidence that a conviction was obtained by the prosecutor's knowing use of perjured testimony. *See Kirkpatrick v. Whitley,* 992 F.2d 491, 497 (5th Cir.1993) (noting the difference between the *Brady* standard and the "knowing use of perjury" standard and characterizing the latter as "considerably less onerous"); *see also United States v. Endicott,* 869 F.2d 452, 456 (9th Cir. 1989). The Supreme Court has held that a conviction so obtained "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397; *see Napue v. Illinois,* 360 U.S. 264, 272, 79 S.Ct. 1173, 1178–79, 3 L.Ed.2d 1217 (1959). The Supreme Court subsequently described this test as a materiality standard under which "the fact that the testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt." *Bagley,* 473 U.S. at 690, 105 S.Ct. at 3382.

*United States v. Duke,* 50 F.3d 571, 577 (8th Cir.1995).

Assuming arguendo that the testimony given by Davis regarding the plea agreement was perjured and as such the trial court should have employed the *Agurs* standard in considering materiality of Davis' perjured testimony, we find the defense failed to show the materiality of the perjured testimony.

> Even where the prosecutor has used perjured testimony, a new trial is mandated only if materiality standards are met. Effect on the trial, not culpability of the prosecutor, is the critical issue.... The reviewing court must examine the importance of the tainted testimony, and the weight of the independent evidence of guilt.

*Hamann v. State,* 324 N.W.2d 906, 910 (Iowa 1982).

The tainted testimony given by Davis was of little importance as the withheld information was of little, if any, additional impeachment value in light of the defense's utilization of the known terms of the agreement for impeachment purposes. In addition, and as previously discussed, Davis' testimony corroborated that of the other State's witnesses and there was ample independent evidence of defendants' guilt. Even assuming arguendo that Davis' testimony was perjured and the trial court employed the improper standard, we find defendants have not shown any reasonable likelihood the perjured testimony affected the outcome of the trial. It is clear to us the State's failure to disclose the perjured testimony was harmless beyond a reasonable doubt.

**AFFIRMED.**

HUITINK, J., not participating.