# IN THE COURT OF APPEALS OF IOWA

No. 18-1244
Filed September 25, 2019

**HOLGER ERNST HEINZ GOEBEL,**
Plaintiff-Appellant,

**vs.**

**GREEN LINE POLYMERS, INC.,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

Holger Goebel appeals the denial of his motion for a new trial. **AFFIRMED.**

Joshua M. Moon, Matthew M. Craft, and Nathan J. Schroeder of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellant.

J. Scott Bardole of Andersen & Associates, West Des Moines, for appellee.

Heard by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

Holger Goebel appeals after the district court's denial of his motion for a new trial following a civil jury verdict in favor of Green Line Polymers, Inc. (Green Line). He argues (1) the court abused its discretion in (a) allowing expert opinion testimony from a non-expert witness, (b) allowing said testimony despite its alleged irrelevance, and (c) allowing Goebel to be questioned concerning specific instances of conduct that had little to no bearing on his character for truthfulness; and (2) "a new trial should be granted where cumulative errors in the record reasonably support the request for a new trial" and "contributed to the jury's verdict contrary to the great weight of the evidence."[1]

I.     **Background Facts and Proceedings**

Goebel has been a truck driver for roughly thirty years. He was born in Germany but moved to Canada when he was forty-three years old. In 2012, Goebel began his employment for a trucking business, Wildwood Transport (Wildwood), in Canada. On April 7, 2015, Goebel picked up a load of plastic pipes in Strathmore, Canada. The destination for the load was Green Line in Waterloo, Iowa. The pipes were stacked in five rows on Goebel's trailer by individuals working at the location where Goebel picked up the load, using a forklift with a clamp. The first three rows individually consisted of two separate groupings of four twelve-inch-diameter pipes each, each grouping of four being bound together with metal bands. The fourth row consisted of six sixteen-inch-diameter pipes. The evidence is disputed as to whether the pipes in the fourth row were bound with

---

[1] We interpret this latter argument as a challenge to the sufficiency of the evidence supporting the jury's verdict. Goebel agreed with our interpretation during oral arguments.

metal bands, and this was a central factual issue at trial.[2]  The fifth row consisted of six sixteen-inch-diameter pipes.  The evidence is undisputed that the pipes contained in this row were not bound together with metal bands.  Goebel individually secured each of the rows to his trailer with fabric ratchet straps as they were loaded.

Goebel departed from Strathmore at 6:00 p.m.  He arrived at Green Line on April 10 at 8:15 a.m.  After weighing in, he parked his truck where directed.  The atmosphere at Green Line was noisy.  After parking, Goebel got out of his truck and removed his fabric straps from the top row of pipes.  Goebel then stood next to his truck.  Green Line employees Corey Emery, James Holden, and Joshua Troupe[3] comprised the crew that was involved in the unloading of Goebel's trailer. Emery began unloading the pipes with a forklift with two prongs but no clamp. Emery removed the pipes in the fifth row and transported them to a nearby recycling machine without incident.  Goebel then removed the fabric straps that were securing the fourth row of pipes.  Goebel then positioned himself on the passenger side of his truck behind the rear axle and began rolling up his straps. According to his testimony, he then observed, "[o]ut of the corner of [his] eye," the forklift was moving and "came out with the pipes" and a "pipe came off and caught" him on the neck.  Goebel then fell backwards and the pipe fell on him.  He sustained injuries.

---

[2] Goebel testified they were bound.  A number of witnesses testified they were not, while others testified the metal bands on the subject row were broken.  Photographs admitted as evidence that were taken shortly after the accident show the pipes contained in the fourth row were not secured together with metal bands.  There is evidence upon which the jury could have concluded the pipes in the fourth row were not bound together with metal bands.

[3] Holden and Troupe no longer worked for Green Line at the time of trial.

In November 2016, Goebel filed a civil petition against Green Line alleging negligence. At trial, Holden testified the forklift was nowhere near Goebel's trailer when the pipe fell from it. Instead, he testified the pipe fell from the trailer while Goebel was next to it collecting the straps he had just removed from the trailer. Troupe also testified[4] that Emery was backing the forklift out of the area where the recycling machine was located, which was roughly thirty yards away from Goebel's truck, when he heard the pipe hit the ground. Emery likewise testified he was near the recycling machine, not Goebel's trailer, when the pipe fell. One of Green Line's experts, Dr. Todd Menna, who holds bachelor's, master's, and doctorate degrees in materials science and engineering, testified the pipe fell after the fabric straps were removed because of the way they were stacked and their return to their natural curvature after Goebel removed his fabric straps. Wildwood's safety manager, Doug Bowes, testified[5] that, because the subject row of pipes was not bound together, Goebel should not have allowed them on his trailer and Goebel improperly loaded his trailer by allowing the pipes to be placed thereon.

Bowes was deposed in February 2018. Thereafter, Goebel filed a motion for pretrial ruling on admissibility of evidence. Goebel requested that Bowes not be allowed to testify concerning Goebel's disciplinary record as a driver, arguing such testimony would be irrelevant or prejudicial. He also requested that Bowes not be allowed to provide expert opinion testimony.[6] Green Line responded that

---

[4] Troupe did not testify at trial. The testimony he gave in a prior deposition was provided to the jury.

[5] Bowes likewise did not testify at trial. His deposition testimony was read to the jury.

[6] Goebel had actually designated Bowes as an expert in his expert-witness list, noting that, based on his "background in the trucking industry and his experience as a risk manager for a trucking company, his testimony could be considered expert in nature."

allowing Bowes to testify concerning Goebel's disciplinary record would potentially be admissible for impeachment purposes and Bowes could properly provide expert testimony based on his knowledge and experience in the trucking industry. Following a hearing, the court ruled Goebel's disciplinary record, namely that he had lied to his employer during a prior incident, "shall not be presented to the jury unless or until evidence has been received regarding the reputation of [Goebel] for truthfulness and the court has been alerted to the use of said evidence." However, the court denied Goebel's request that Bowes not be allowed to provide expert testimony, finding "an adequate foundation was laid during the deposition to establish . . . Bowes as an expert."

During cross-examination at the trial, Goebel was questioned whether any drivers working for his employer had ever been suspended for improperly securing a load. He responded in the negative. Defense counsel requested a conference outside the presence of the jury, during which he requested he be allowed to question Goebel regarding an incident in which he was, in fact, previously suspended for improperly securing a load. Goebel's counsel objected on prejudice and improper-impeachment grounds. The court allowed the line of questioning for purposes of impeachment.

The jury ultimately returned a verdict finding Green Line was not at fault. Goebel filed a motion for a new trial. In his supporting brief, Goebel argued a new trial was warranted under Iowa Rule of Civil Procedure 1.1004(6) because the verdict was "unsupported by the evidence." He also argued Bowes was not qualified to provide expert testimony and his testimony was irrelevant to the issue of liability between the parties and prejudicial. Finally, Goebel challenged the

court's admission of matters included in his disciplinary and driving history. The court denied the motion and this appeal followed.

**II.    Analysis**

A.    Expert Testimony and Relevance

First, Goebel challenges the court's decision to allow Bowes to provide expert testimony. "We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion" and "will reverse a decision by the district court concerning the admissibility of expert opinions only when the record shows 'the court exercised [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010) (alteration in original) (quoting *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997)).

Iowa courts are "committed to a liberal view on the admissibility of expert testimony." *Id.* Courts must consider two matters before admitting expert testimony: (1) "whether the expert's proposed testimony will 'assist the trier of fact' in understanding 'the evidence or to determine a fact in issue'" and (2) "whether the witness is qualified to testify as an expert 'by knowledge, skill, experience, training, or education' on the subject matter in question." *Quad City Bank & Tr. v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 92 (Iowa 2011) (quoting Iowa R. Evid. 5.702).

As to the first inquiry, Goebel argues Bowes's testimony concerning whether Goebel's trailer was improperly loaded for want of metal bands on the fourth row of pipes would not assist the jury in determining a fact in issue because that factual issue was irrelevant. For the challenge to relevancy, Goebel vaguely

argues the testimony did not concern a fact in issue and did not "make the existence of any fact that [was] of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"Evidence is relevant if" "[i]t has any tendency to make a fact more or less probable than it would be without the evidence; and" "[t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. Whether the fourth row of pipes was bound and whether transporting pipes of this nature without the bands was an unsafe practice were highly relevant considerations for the jury's determination of liability. We easily conclude Bowes's testimony was helpful to the jury in both understanding the evidence and determining a fact in issue. *See* Iowa R. Evid. 5.702.[7]

As to the second inquiry, Goebel largely argues that Bowes was not qualified to render expert opinion testimony. Goebel highlights the facts that Bowes does "not have any advanced degrees" or a "formal education beyond his GED." However, the source of an expert's knowledge is not significant. *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 309 (Iowa 1998). While Bowes's formal education is limited, he has extensive experience in the trucking industry. He obtained a Canadian equivalent to a commercial driver's license in 1995 and drove for about three years thereafter. In or about 1999, he moved into an office setting, in which he variously worked as a dispatcher; fleet manager; load planner;

---

[7] Goebel asserted in oral argument that the testimony was irrelevant because it was unreliable, as Bowes did not testify his opinion was based on any regulation or standard practice. We conclude the alleged deficiency concerned the weight the evidence should receive as opposed to its admissibility. *See, e.g.*, *Warner v. Moore*, No. 05-0403, 2006 WL 334259, at *4 (Iowa Ct. App. Feb. 15, 2006) (noting complaints about the "imprecise nature" of expert opinion testimony "go to its weight, rather than its admissibility").

recruiter; and in human resources, customer service, and, perhaps most importantly, safety and compliance. Bowes started working for Wildwood in early 2014 as its manager of safety and human capital. In this position, Bowes was responsible for safety and compliance, among other things. Bowes testified he is familiar with trucking-related regulations that require pipes of the sort in this case be banded together when placed on a trailer.

Upon our review, we are unable to say the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable in concluding that Bowes's experience in the trucking industry qualified him as an expert and allowing him to testify as such. *See Ranes*, 778 N.W.2d at 685. We affirm the district court on this matter.[8]

     B.     Specific Instances of Conduct

Next, Goebel argues the district court abused its discretion in allowing the elicitation of testimony concerning Goebel's prior suspension by his employer for improperly securing a load on his trailer. Goebel argues the testimony was irrelevant. Appellate review of the court's decision to allow questioning for

---

[8] We find Goebel's passive suggestion in his appellate brief that Bowes's testimony should have been excluded on prejudice grounds insufficient to facilitate our review. *See McCleeary v. Wirtz*, 222 N.W.2d 409, 417 (Iowa 1974) (noting "random discussion" of an issue "will not be considered" on appeal). To the extent he sufficiently formulates the argument for the first time in his reply brief, we do not consider it. *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992) ("[A]n issue cannot be asserted for the first time in a reply brief."). We also do not consider the claim, made for the first time in his reply brief, that Bowes's testimony improperly amounted to legal conclusions. *See id.*

     In any event, the probative value of Bowes's testimony was not outweighed by the danger of unfair prejudice, and certainly not substantially so, *see* Iowa R. Evid. 5.403, and the testimony was proper opinion testimony. *See* Iowa R. Evid. 5.704; *State v. Dinkins*, 553 N.W.2d 339, 341 (Iowa Ct. App. 1996) (noting expert opinions "may generally be expressed even though they embrace an ultimate issue to be decided by the trier of fact" (citation and internal quotation marks omitted)).

impeachment purposes is for an abuse of discretion. *See State v. Frazier*, 559 N.W.2d 34, 38 (Iowa Ct. App. 1996).

At trial, Goebel was questioned on cross-examination whether he was "aware of any Wildwood drivers who have ever been suspended or fired for improperly securing a load." Goebel responded in the negative. Defense counsel requested a conference outside the presence of the jury, during which counsel requested to be allowed to question Goebel about his prior suspension for impeachment purposes. Over objection, the court allowed the line of questioning.

"[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of" the witness. Iowa R. Evid. 5.608(b)(1). Goebel argues his prior suspension was not probative of his character for truthfulness or untruthfulness.

"Cross-examination can be a powerful elixir for the truth, and our rules permit cross-examination as a means to both delve into the story told by the witness on direct examination . . . and to challenge credibility." *State v. Parker*, 747 N.W.2d 196, 207 (Iowa 2008). Here, we agree with Goebel that his prior suspension was not probative of his character for truthfulness or untruthfulness, at least initially. However, when Goebel testified he was unaware of any Wildwood drivers who have ever been suspended or fired for improperly securing a load, the specific instance of conduct (his prior suspension) clearly became probative of his character for truthfulness or untruthfulness, as he had just lied on the stand, while under oath.

Upon our review, we are unable to say the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable in allowing the complained-of line of questioning.[9]  *See Frazier*, 559 N.W.2d at 38.

C.      Sufficiency of the Evidence

Finally, Goebel argues "a new trial should be granted where cumulative errors in the record reasonably support the request for a new trial" and "contributed to the jury's verdict contrary to the great weight of the evidence."  As noted, we interpret the argument to be a challenge to the sufficiency of the evidence supporting the jury's verdict.[10]  *See* Iowa R. Civ. P. 1.1004(6).

Our review of sufficiency-of-the-evidence challenges is for legal error.  *See Estate of Hagedorn ex rel. Hagedorn v. Peterson*, 690 N.W.2d 84, 87 (Iowa 2004).  We will uphold the jury's verdict if supported by substantial evidence.  *See Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006).  "Evidence is substantial if reasonable minds could accept it as adequate to reach the same findings."  *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996).  In determining whether the verdict is supported by substantial evidence, we view the evidence in the light most favorable to the verdict.  *See Miller*, 720 N.W.2d at 567.  Evidence is not rendered insubstantial merely because it might support a different

---

[9] Again, we do not consider Goebel's passive assertion the line of questioning "resulted in exciting prejudice against" him, *McCleeary*, 222 N.W.2d at 417, or any formulation of the argument for the first time in his reply brief.  *Young*, 480 N.W.2d at 78.  In any event, while attacks to credibility on cross-examination are necessarily prejudicial to some extent, we conclude the probative value as to Goebel's credibility was not *substantially* outweighed by the danger of *unfair* prejudice.  *See* Iowa R. Evid. 5.403.

[10] The only errors cited in this portion of the brief are to the district court's evidentiary rulings, which we have already addressed.  Goebel goes on to argue he is entitled to a new trial because "the jury's verdict [is] contrary to the great weight of the evidence."

conclusion; the only question is whether the evidence supports the finding actually made. *See Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

While many factual matters were disputed and the trial had its fair share of conflicting evidence, the totality of the evidence, when viewed in the light most favorable to the verdict, supports a conclusion that Green Line was not negligent. As such, we affirm the district court's denial of Goebel's motion for a new trial on sufficiency-of-the-evidence grounds.

## III.    Conclusion

We affirm the district court's denial of Goebel's motion for a new trial in its entirety.

**AFFIRMED.**