STATE of Iowa, Appellee,

v.

Ronald Ray SMITH, Appellant.

No. 93–863.

Supreme Court of Iowa.

Oct. 19, 1994.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., Lee W. Beine, County Atty., and Sterling L. Benz, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Defendant, Ronald Ray Smith, appeals his convictions of second-degree sexual abuse and child endangerment in violation of Iowa Code sections 709.3(1) and 726.6(3) (1993). Smith argues the district court erred in (1) refusing to allow him to impeach the complainant on cross-examination concerning her character for truthfulness, (2) admitting ex-- pert opinion testimony on an ultimate issue to be decided by the jury, and (3) failing to order the production of the complainant's mental health records. We affirm.

I. *Background Facts and Proceedings.*

Smith lived with Wendy Parker and her two children. One of these children, two-year-old S.S., was also the defendant's child. Smith discovered that Parker had taken a trip to Chicago with another man. One afternoon Smith became intoxicated and began to question Parker about the trip. An argument followed and soon escalated into a violent confrontation between Smith and Parker.

S.S., hearing her parents arguing, came into the room crying and Parker picked her up. Smith backed Parker and S.S. into the laundry room. He then pushed Parker who fell to the floor. S.S. fell out of Parker's arms and hit her head on the wall.

Parker stood, picked up S.S. and walked into the dining room. Smith struck Parker on the back of her head with a closed fist, causing Parker's knees to buckle. Smith took S.S. to the living room. Returning to the dining room Smith struck Parker twice in the face as he continued to argue with her about their relationship.

Smith eventually asked Parker to have sex with him. She refused. Smith then pushed Parker to the floor and they had intercourse. Parker testified that while they were on the floor Smith had his hands on her throat. Afterwards Smith struck Parker two more times causing Parker's nose to bleed.

When Smith's anger had abated, Parker went to the living room where she found S.S. awake and lying on the couch. After she put S.S. to bed, Parker told Smith that she had to pick up their laundry at the laundromat. Parker left, retrieved the laundry and came back to the house. However, while still in her car she decided she would go to the police station and left again.

While Parker was being interviewed by a police officer, Smith entered the police station and demanded to speak with her. He had left S.S. alone in the house. After Smith

became argumentative talking to Parker, the police arrested him.

Later that evening Parker had a sexual assault examination. The exam revealed recent sexual intercourse and several bruises on Parker's wrists and on her tail bone.

Smith was charged with second-degree sexual abuse and child endangerment without serious injury. At trial Smith's version of the events was largely the same as Parker's except Smith contended that the sexual intercourse was consensual and occurred without any threat of violence. A jury found Smith guilty of the offenses charged.

## II. *Impeachment.*

During cross-examination of Parker, defense counsel questioned her regarding her trip to Chicago. The court allowed defense counsel to establish that Parker took the trip with a male friend. However, the court sustained the State's objections to questions intended to elicit the lies Parker told Smith to prevent Smith from learning that she took the trip with another man.

Smith asserts this questioning was intended to impeach Parker's credibility by showing she lied about the trip. He argues that this questioning was proper under Iowa Rule of Evidence 608. The State contends that the questions were of limited probative value and highly prejudicial to Parker.

■ Rule 608 allows a witness to be impeached through cross-examination by evidence of specific instances of conduct. Cross-examination concerning such conduct is permissible only if probative of truthfulness or untruthfulness. Iowa R.Evid. 608(b); *State v. Martin,* 385 N.W.2d 549, 552 (Iowa 1986). The trial court has discretion to disallow cross-examination otherwise permitted by rule 608(b). *Martin,* 385 N.W.2d at 552.

■ We will disturb the trial court's ruling only if the court obviously abused its discretion. *Id.* An abuse of discretion will be found when the court exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable. *Id.*

■ We believe the trial court here did not abuse its discretion by limiting defense counsel's questions concerning Parker's trip to Chicago. This evidence was only minimally probative of Parker's truthfulness concerning the sexual abuse charges. *See Martin,* 385 N.W.2d at 553. Parker presumably tried to keep her affair secret from Smith to preserve their relationship or to avoid Smith's anger. These motives are entirely different from any motivation she might have to lie about the alleged sexual assault.

Additionally, the detailed questioning desired by Smith would have made Parker's affair a focal point at trial contrary to the spirit of Iowa Rule of Evidence 412. *See* Iowa R.Evid. 412 (evidence of the past sexual behavior of an alleged victim of sexual abuse inadmissible with certain exceptions not applicable here). Moreover, Iowa Rule of Evidence 403 allows a trial judge to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." The issue here was whether Parker lied about her lack of consent, not whether Parker was a bad person or whether Smith was justified in being angry with Parker because she had an affair. We find no abuse of discretion.

## III. *Expert Witness Testimony.*

■ At trial a Department of Human Services' child abuse investigator testified that in her opinion Smith's actions created a substantial risk to S.S.'s physical, mental or emotional health or safety. Smith contends that the district court erred in admitting this testimony because it was tantamount to an opinion on Smith's guilt of the child endangerment charge. When a district court has exercised its discretion to admit expert testimony, we will reverse only if we find an abuse of discretion. *State v. Myers,* 382 N.W.2d 91, 93 (Iowa 1986).

■ Iowa Rule of Evidence 704 permits otherwise admissible opinion testimony even though "it embraces an ultimate issue to be decided by the trier of fact." Iowa R.Evid. 704; *State v. Murphy,* 451 N.W.2d 154, 156 (Iowa 1990). However, a witness may not express an opinion on the defendant's guilt or innocence. *Myers,* 382 N.W.2d at 97.

■ The offense of child endangerment requires proof that the defendant "[k]nowingly act[ed] in a manner that creat[ed] a substantial risk to a child or minor's physical, mental or emotional health or safety." Iowa Code § 726.6(1)(a) (1993). The investigator's testimony was not an opinion on Smith's guilt or innocence because she did not comment on whether he acted "knowingly" or on whether he committed the acts to which Parker testified. *See State v. Akright*, 506 N.W.2d 465, 468 (Iowa App.1993). She merely testified to one element of the crime. *Compare Murphy*, 451 N.W.2d at 156 (opinion testimony on intoxication permissible) *with State v. Maurer*, 409 N.W.2d 196, 198 (Iowa App.1987) (testimony that beyond all reasonable doubt defendant operated a motor vehicle on a public highway while intoxicated was inadmissible).

■ Smith also relies on the principle that a witness may not express an opinion on whether certain conduct met a standard fixed by law. *State v. Breitbach*, 488 N.W.2d 444, 447 (Iowa 1992). We do not believe that the investigator's testimony violated this principle. The opinion given by the investigator went to a factual question, not compliance or noncompliance with a standard fixed by law.

The trial court did not abuse its discretion in admitting the investigator's testimony.

## IV. *Medical Records.*

Parker received treatment for depression approximately two years before this incident. Before trial Smith tried unsuccessfully to subpoena Parker's medical records from the hospital that treated her. At defense counsel's request, Parker brought her complete mental health records to the trial. Smith renewed his request for the records. Parker objected to their production asserting that the records were irrelevant and were protected by the physician-patient privilege. After reviewing the records in camera, the district court refused to order their production. It found that the records were irrelevant and subject to the physician-patient privilege found in Iowa Code section 622.10 (1993).

Smith contends he is entitled to discovery of the records pursuant to Iowa Rule of Criminal Procedure 13(2)(b)(1). Additionally, Smith argues that Parker waived the physician-patient privilege by testifying about her state of mind during the sexual assault.

■ We do not agree that rule 13(2)(b)(1) makes the mental health records of a sexual abuse victim discoverable by a defendant. Rule 13(2)(b)(1) allows a defendant to discover only those documents "seized by" or in "the possession, custody or control of the state." *State v. Stratton*, 519 N.W.2d 403, 404 (Iowa 1994). Parker's mental health records were not seized by the state nor were they in its possession, custody or control. Consequently, rule 13(2)(b)(1) does not require the state or any other party to produce these records for Smith's inspection. *Id.*

Smith does not contest the applicability of section 622.10 to his request for production of Parker's medical records. *See McMaster v. Board of Psychology Examiners*, 509 N.W.2d 754, 757 (Iowa 1993) (section 622.10 protects only against the testimonial disclosure of confidential communications between a physician and patient), *cert. denied*, —— U.S. ——, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994). Smith's challenge to the trial court's ruling rests on his contention that Parker waived the physician-patient privilege by putting at issue her mental state at the time of the offense. He argues that her testimony that the sexual acts were forced rather than consensual put her state of mind at issue.

■ Smith relies on our decision in *State v. Cole*, 295 N.W.2d 29 (Iowa 1980). In *Cole* we held that a defendant who claimed diminished capacity as a defense to a first-degree murder charge could not rely on the physician-patient privilege to prevent the deposition of the psychiatrist who was treating her at the time of the murder. *Cole*, 295 N.W.2d at 35. We do not find the facts here sufficiently analogous to the situation presented in *Cole* to require the same result. Parker did not claim diminished capacity or the existence of any mental condition that precluded her from giving consent. She simply testified that she did not agree to the sex act with Smith. Under these circumstances, Parker

did not put her mental state at issue. We hold that Parker did not waive the physician-patient privilege by claiming that she did not consent to Smith's sexual acts.

**AFFIRMED.**