**IN THE COURT OF APPEALS OF IOWA**

No. 4-009 / 12-2138
Filed March 12, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEMARRIO DESHON WRIGHT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer and Bradley J. Harris, District Court Judges.


        Appellant appeals his conviction for sexual abuse in the second degree, sexual abuse in the third degree, and indecent contact with a child.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Linda Fangman, Assistant County Attorney, for appellee.


        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

Demarrio Wright appeals his conviction of sexual abuse in the second degree, sexual abuse in the third degree, and indecent contact with a child, in violation of Iowa Code sections 709.3, 709.4, and 709.12(1) and (2) (2011), respectively. He contends the district court erred in allowing the jury to hear testimony regarding an additional instance of sex abuse between Wright and the victim, where the additional instance of sex abuse was not part of the conduct underlying the charges in this proceeding. He also contends his trial counsel was constitutionally ineffective for failing to move to dismiss or otherwise challenge the trial information as being untimely filed in violation of Iowa Rule of Criminal Procedure 2.33(2)(a).

I.

On August 15, 2011, a complaint was filed in Black Hawk County accusing Wright of the crime of lascivious acts with a child, in violation of Iowa Code section 709.8(2). A warrant for his arrest on that charge was issued the same date. At the time the arrest warrant was issued, Wright was on probation in Polk County under the supervision of the Fifth Judicial District Department of Correctional Services ("DCS"). An investigator in the Black Hawk County case notified DCS of the outstanding warrant. The DCS Fugitive Team executed the warrant on August 17, 2011, arrested Wright, and placed him in the custody of the Polk County Sheriff. After his arrest, Wright's probation officer filed a report of violations in Wright's Polk County probation case. Wright remained in the custody of the Polk County Sheriff on a no-bond hold until his Polk County

probation violation matter was resolved on October 21, 2011. The Polk County Sheriff then released Wright to the Black Hawk County detainer.

On October 31, 2011, the State filed its trial information in Black Hawk County, charging Wright with the following: sexual abuse in the third degree, in violation of Iowa Code section 709.4; lascivious acts with a child, in violation of section 709.8(1); and indecent contact with a child, in violation of section 709.12(1). Wright's trial counsel moved to dismiss the information on the ground the State failed to file the trial information within forty-five days of Wright's arrest, in violation of Iowa Rule of Criminal Procedure 2.33(2)(a). The court granted the motion with respect to the charge of lascivious acts with a child. The court denied the motion with respect to the remaining charges.

On July 31, 2012, the State filed an amended trial information charging Wright with the following: sexual abuse in the second degree, in violation of section 709.3; sexual abuse in the third degree, in violation of section 709.4; and indecent contact with a child, in violation of section 709.12(1) and (2). The matter went to trial, and on October 2, 2012, a jury found Wright guilty of all three counts.

II.

Wright was charged with committing sex abuse against and having indecent contact with his daughter, M.W., on several occasions between 2005 and 2010. M.W. was born to Wright and Q.M. in 1997. M.W. lived with her mother in a small house in Waterloo where M.W. shared a bedroom with her younger brother. Wright resided at the home on an irregular basis.

The trial testimony showed that Wright's abuse of M.W. began in 2005, when M.W. was eight years old. Early one morning in 2005, Wright woke M.W. up and asked her to come from her bedroom and lay on the couch with him, and she did. M.W.'s mother already was at work. M.W.'s younger brother remained sleeping in the shared bedroom. After M.W. lay on the couch with Wright, Wright took off M.W.'s pajama bottoms, touched M.W.'s thighs with his hands, and digitally penetrated her vagina. After about five minutes, Wright stopped and told M.W. to go wash up and get ready for school. On another occasion, Wright entered M.W.'s bedroom while she was sleeping. He woke M.W. up and rubbed her thighs and vaginal area over her clothing. The testimony showed that Wright continued to wake M.W. up and touch her inappropriately on other occasions. The abuse stopped while M.W. was still eight years old when Wright stopped coming to the house.

When M.W. was nine years old, her school had a "good touch/bad touch" lesson. M.W. filled out a questionnaire and stated she had experienced a "bad touch." M.W. was sent to the school guidance counselor to whom M.W. revealed the abuse. The guidance counselor called M.W.'s mother and the Iowa Department of Human Services ("DHS"). M.W.'s mother took M.W. home and discussed the incident with M.W. and Wright. Wright became angry at M.W. when he heard what M.W. had told the guidance counselor. The mother did not believe M.W.'s story. When DHS came to interview M.W., she told DHS that no abuse had occurred. M.W. testified she did this because she did not want her parents to be mad at her.

When M.W. was twelve years old, Wright moved from Waterloo to Des Moines. On occasion, he came back to Waterloo and stayed with the family. In 2010, when M.W. was thirteen years old, her uncle finished a bedroom in the basement of the mother's house so that M.W. would have her own bedroom. A few weeks prior to Thanksgiving 2010, Wright came to the residence late one evening and entered M.W.'s bedroom in the basement. Wright, appearing to M.W. to be intoxicated, turned on the television and went to M.W.'s bed. Wright rubbed M.W.'s thighs and vaginal area over M.W.'s clothes. Wright then removed M.W.'s pants, and began licking M.W.'s vagina. Wright then digitally penetrated M.W.'s vagina. He unsuccessfully attempted to insert his erect penis into M.W.'s vagina. Wright eventually left M.W.'s room and the house. M.W. did not tell her mother because M.W. was afraid her mother would not believe her.

At trial, Wright's counsel attempted to exclude testimony regarding another uncharged incident of sex abuse committed by Wright against M.W. Prior to trial, Wright filed a motion in limine seeking to prevent testimony regarding an incident of sexual abuse that allegedly occurred while Wright and M.W. were visiting relatives in Mississippi. At trial, the district court overruled the motion in limine. A mistrial was declared for other reasons. Prior to selecting a new jury, the district court affirmed that its ruling on the motion in limine would apply. The trial testimony showed that two weeks after the incident occurring in M.W.'s basement bedroom, Wright brought M.W. and her brother to visit Wright's mother in Mississippi for Thanksgiving. While there, M.W. slept in the living room along with her brother and another relative. On Thanksgiving, Wright became

intoxicated and left the house for a period of time only to return while everyone in the house was asleep. Wright woke up M.W. and asked her to come into the dining room with him, which was separated from the living room by a curtain. Once there, Wright began kissing M.W.'s neck and rubbing M.W.'s vaginal area over her clothes. Wright then took off M.W.'s pajama pants and began licking her vagina. He then digitally penetrated her vagina and unsuccessfully attempted to insert his erect penis into M.W.'s vagina. After Wright stopped, M.W. went into the bathroom, called her mother, and told her what happened. M.W.'s mother then spoke to Wright's mother about M.W.'s report. They decided that M.W. would ride back to Iowa with M.W.'s aunt instead of Wright.

M.W.'s maternal grandmother learned of this incident and contacted DHS. After that meeting, DHS involved local police to investigate.

III.

A.

Wright contends the testimony regarding the incident in Mississippi should have been disallowed. Because the charges against Wright did not encompass this specific act of abuse, Wright contends that the incident in Mississippi constituted a "prior bad act" that was unfairly prejudicial.[1] "We review rulings on

---

[1] Because the uncharged Mississippi incident occurred *after* the conduct for which Wright was charged, the Mississippi incident is a subsequent bad act. Our analysis of the admissibility of a "subsequent bad act" is the same as a "prior bad act." *See State v. Munz*, 355 N.W.2d 576, 581 (Iowa 1984) (stating "in sex abuse cases . . . subsequent acts are as probative as those prior to the date of the charged offense"); *State v. Puffinbarger*, No. 06-0779, 2008 WL 508404, at *2 (Iowa Ct. App. Feb. 27, 2008) ("In our view, the fact that the acts occurred after the charged act rather than before does not render the evidence less probative because it still bore on the nature of the relationship

the admission of evidence of prior bad acts for an abuse of discretion." *State v. Reyes*, 744 N.W.2d 95, 99 (Iowa 2008). "An abuse of discretion will be found when the court exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *State v. Smith*, 522 N.W.2d 591, 593 (Iowa 1994).

"A court may admit evidence of prior bad acts when it determines (1) the evidence is relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts, and (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *State v. Cox*, 781 N.W.2d 757, 761 (Iowa 2010) (citation and quotation marks omitted) (emphasis in original). Regarding the admission of prior acts of sexual abuse, the Iowa Code provides the following:

> In a criminal prosecution in which a defendant has been charged with sexual abuse, evidence of the defendant's commission of another sexual abuse is admissible and may be considered for its bearing on any matter for which the evidence is relevant. This evidence, though relevant, may be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. This evidence is not admissible unless the state presents clear proof of the commission of the prior act of sexual abuse.

Iowa Code § 701.11(1) (2011). Direct testimony from the victim of the prior abuse is sufficient "clear proof" to meet the requirements of this section. *See Reyes*, 744 N.W.2d at 101.

In the present case, there was a legitimate issue as to whether the abuse of M.W. actually occurred. Wright testified on his own behalf and denied the

---

between [defendant] and [victim]."). For the sake of simplicity, we will continue to refer to the incident as a "prior bad act."

allegations. He testified that M.W. dreamed the events. M.W.'s testimony and Wright's testimony were crucial because the physical evidence of sexual abuse was inconclusive. Therefore, testimony of another incident of sexual abuse corroborated by a contemporaneous report of the same was relevant to whether the charged conduct actually occurred. *See State v. Spaulding*, 313 N.W.2d 878, 880 (Iowa 1981) (stating a legitimate issue in the case can include the need to show that the defendant had "a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial"); *State v. Davis*, No. 06-1496, 2007 WL 4553477, at *2 (Iowa Ct. App. Dec. 28, 2007) ("[T]he details concerning the prior abuse were relevant to legitimate issues in dispute. Davis completely denied the charged sexual abuse and physical evidence was inconclusive . . . . Davis claimed [victim] fabricated the story . . . . Thus, evidence showing Davis had a "passion or propensity" for [victim] and was therefore motivated to engage in the charged sexual acts with her is made more or less probable by the details of the earlier sexual abuse."); *State v. Paulson*, No. 06-0141, 2007 WL 461323, at *4 (Iowa Ct. App. Feb. 14, 2007) ("[T]he defendant completely denied any sexual abuse of [the victim], which directly contradicted [the victim's] description. Therefore, the need for other evidence was substantial.").

It cannot be said that the probative value of the prior bad act was substantially outweighed by the danger of unfair prejudice to Wright. The uncharged conduct was similar in nature to the charged conduct occurring in M.W.'s bedroom two weeks prior—both incidents involved Wright digitally

penetrating, licking, and attempting to insert his erect penis into M.W.'s vagina. Thus, the nature of the prior bad act is no more egregious or inflammatory than the charged conduct and was unlikely to unfairly inflame the passions of the jury. *See State v. Larsen*, 512 N.W.2d 803, 808 (Iowa Ct. App. 1993) (analyzing the "comparative enormity" of the charged offense with uncharged conduct and concluding the uncharged crime "did not involve conduct any more sensational or disturbing" than the charged crime so as to warrant exclusion"). Further, the State did not spend a significant amount of time developing testimony regarding the prior bad act during trial. *See Reyes*, 744 N.W.2d at 100 (holding evidence of prior bad act admissible where testimony was "concise, direct, and noninflamatory, and of a nature similar to that in the underlying charge" and "was not of a nature that would have incited 'overmastering hostility' toward [the defendant]") (citation omitted); *State v. White*, 668 N.W.2d 850, 855 (Iowa 2003) (holding testimony regarding prior bad act properly admitted where 1) prior act was not the focus on the trial, 2) the evidence of the prior act was "not likely to arouse the jury's sense of horror," and 3) prior act was no more brutal than defendant's acts at issue in the case); *State v. Coleman*, No. 02-0423, 2003 WL 21919175, at *2 (Iowa Ct. App. Aug. 13, 2003) (holding allowing evidence of prior bad act was not an abuse of discretion where both acts involved "identical individuals, the identical location, similar circumstances, and similar conduct"); *Davis*, No. 06-1496, at *3 ("[T]hough the nature of Davis's prior bad acts could tend to raise the passion of the jury, the specific prior bad acts were not more prejudicial than the evidence concerning the actual crime charged.").

Two additional factors also mitigate the potential for unfair prejudice. First, the close temporal proximity between the Mississippi incident and the charged conduct makes the prior bad act more probative than prejudicial. *See State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004) (finding that an allegation of a prior bad act which occurred three years prior to the charged crime was so remote as to cast doubt on the weight of the evidence). Second, the trial court gave appropriate limiting instructions:

> You have heard evidence that the defendant allegedly committed other acts with [M.W.] in Mississippi. If you decide the defendant committed these other acts, you may consider those acts only to determine whether the defendant has a sexual passion or desire for [M.W.]. You may not consider them as proving that the defendant committed the acts charged in this case.

"We have often recognized the importance limiting instructions have in minimizing prejudice." *State v. Martin*, 704 N.W.2d 665, 673 (Iowa 2005). "It is only in extreme cases that such an instruction is deemed insufficient to nullify the danger of unfair prejudice." *State v. Plaster*, 424 N.W.2d 226, 232 (Iowa 1988) ("Here, the district court, with a cautionary instruction, very carefully explained the purpose of the challenged evidence as it related to the issue of consent and admonished the jury that it must not convict [defendant] because of this evidence.").

Ultimately, "whether evidence of prior crimes should be admitted is a judgment call on the part of the trial court." *State v. Rodriquez*, 636 N.W.2d 234, 240 (Iowa 2001). As the *Rodriguez* court noted:

> Analyzing and weighing the pertinent costs and benefits [of admitting prior acts evidence] is no trivial task. Wise judges may come to differing conclusions in similar situations. Even the same

item of evidence may fare differently from one case to the next, depending on its relationship to the other evidence in the case, the importance of the issues on which it bears, and the likely efficacy of cautionary instructions to the jury. Accordingly, much leeway is given trial judges who must fairly weigh probative value against probable dangers.

*Id.* (quoting 1 John W. Strong, *McCormick on Evidence* § 185, at 647–48 (5th ed. 1999)). Under the facts and circumstances of this case, we cannot say the district court abused its discretion in allowing testimony regarding Wright's subsequent sex abuse of the same victim.

B.

Wright next contends his counsel was ineffective for "failing to continue to challenge" the charges of sexual abuse in the trial information and amended trial information on speedy indictment grounds. We typically resolve ineffective-assistance-of-counsel claims after postconviction-relief proceedings. *See State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). When such claims are presented on direct appeal, however, the "court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822." Iowa Code § 814.7(3). Where, as here, the record is sufficient to permit a ruling, we will address the claim on direct appeal. *See Maxwell*, 743 N.W.2d at 195. We review claims of ineffective assistance of counsel de novo. *See Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011).

To establish a claim for ineffective assistance of counsel, Wright must show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Failure to prove either element is fatal to an ineffective-assistance claim. *See State v.*

*Graves*, 668 N.W.2d 860, 869 (Iowa 2003). With respect to the prejudice prong, the ultimate inquiry is whether trial counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the conviction is unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires the defendant to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland*, 466 U.S. at 694).

"Iowa's speedy indictment rule ensures the enforcement of the United States and Iowa Constitutions' speedy trial guarantees, which assure the prompt administration of justice while allowing an accused to timely prepare and present his or her defense." *State v. Utter*, 803 N.W.2d 647, 652 (Iowa 2011). Given the procedural posture of this case, if trial counsel failed to file a meritorious motion to dismiss the amended trial information, there can be no doubt this would constitute prejudice. *See id.* at 654 ("The remedy for a violation of the speedy indictment rule is an absolute dismissal of the charge with prejudice and a complete bar from reindicting the defendant again on the same offense and lesser-included offenses thereof."). We thus address the question of whether the challenge was meritorious and whether counsel breached an essential duty owed Wright by failing to challenge the sexual abuse charges.

The exact nature of Wright's claim is unclear. Wright's trial counsel moved to dismiss the trial information on the grounds that the trial information was not timely filed. The district court granted the motion with respect to the

charge of lascivious acts with a child, but the district court denied the motion with respect to the counts of sexual abuse and indecent contact with a child. We are not sure what more Wright believes trial counsel was constitutionally compelled to do. To the extent that he contends counsel was required to file a motion to reconsider or other similar motion, we conclude there is no such duty. To the extent Wright claims counsel breached an essential duty by not resisting the amended trial information or not moving to dismiss the amended trial information on speedy indictment grounds, the claim is without merit.

"Our speedy indictment rule is activated when an adult is arrested for the commission of a public offense and an indictment is not found against the person within forty-five days." *State v. Edwards*, 571 N.W.2d 497, 499 (Iowa Ct. App. 1997) (alteration omitted) (citation and quotation marks omitted). The plain language of rule 2.33 "restricts the speedy indictment mandate to the offense or offenses for which the defendant was arrested, and does not extend to a different offense not charged in the complaint related to the arrest." *Edwards*, 571 N.W.2d at 499. Here, the complaint related to the warrant executed in August 2011 accused Wright only of the crime of lascivious acts with a child. The speedy indictment rule was activated with respect to that charge, which the district court dismissed on trial counsel's motion. The speedy indictment rule was not activated as to the sexual abuse charges.

Wright contends that the speedy indictment rule extends to other offenses that are in similar in nature to the offense for which the defendant was arrested. Wright's argument is not supported by the plain language of rule 2.33 or case

law. Our cases make clear that the speedy indictment rule is offense specific: the forty-five day period does not commence for the charged offense until such time as the defendant is arrested for that offense. This is true even where the defendant was arrested for a similar but distinct offense arising from the same circumstances as the charged offense. *See id.*; *see also State v. Lies*, 566 N.W.2d 507, 509 (Iowa 1997) ("We conclude conspiracy to commit burglary is neither the same offense as the burglary for which defendant was arrested nor a lesser-included offense; therefore, the trial information charging defendant with conspiracy to commit burglary was timely pursuant to rule 27(2)(a)."); *State v. Sunclades*, 305 N.W.2d 491, 494 (Iowa 1981) ("Under the Burton standard the time period applies only to the 'public offense' for which the defendant was arrested, rather than to all offenses arising from the same incident or episode.").

To determine whether the offense for which defendant was arrested is a different offense than the offense charged, we look to the elements of the offenses. *See State v. Stewart*, 223 N.W.2d 250, 251 (Iowa 1974) (using essential elements test). Sexual abuse in the second- and third-degree, the offenses in the amended trial information, are separate and distinct from lascivious acts with a child, the offense for which defendant was arrested. *See State v. Capper*, 539 N.W.2d 361, 367 (Iowa 1995) (holding lascivious acts was not a lesser included offense of sexual abuse because it "requires] the defendant act with the specific intent to arouse or satisfy sexual desires, an element not required to prove the greater offense of sexual abuse"), *abrogated on other grounds by State v. Hawk*, 616 N.W.2d 527 (Iowa 2000).

Accordingly, any continuing challenge to the charges of sexual abuse would have been without merit. Trial counsel had no duty to file a meritless resistance or motion. *See State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009) ("We have held that counsel has no duty to raise an issue that has no merit.").

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**